FERNANDO SIERRA BERDECÍA, COMMISSIONER OF LABOR, ETC., Complainants and Appellees, v. LEOVIGILDO V. QUILICHINI, Respondent and Appellant.

No. 10338. Argued December 1, 1950.—Decided June 13, 1951.

---

*Brown, Newson & Córdova* for appellant. *Ramón Cancio*, counsel for the Department of Labor, for appellees.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The Commissioner of Labor of Puerto Rico on behalf and for the benefit of several employees of respondent Leovigildo V. Quilichini filed the present suit, claiming such part of the wages that each one of the said employees—chauffeurs—did not receive during the period they worked for respondent in the construction of a road between Aguada and Aguadilla. This was a project of the Department of the Interior of Puerto Rico, to which the Federal Government contributed a part of the funds.[1] Respondent paid the wages to said chauffeurs at the rate of 45¢ per hour and 90¢ per hour, for extra hours. There was no controversy in the lower court, and there is none in this Court in regard to the fact that the work undertaken was construction work and that Mandatory Decree No. 11 of the Minimum Wage Board of Puerto Rico, in force since July 1, 1946 and amended to take effect on November 1 of the same year was applicable.[2]

---

[1] Although this last particular was not included in the stipulation of facts filed by the parties in the lower court on April 25, 1950—by virtue of which the only question in controversy was submitted, that is "whether respondent should have paid them [to complainants] at the rate of 45¢ per hour [90¢ double rate] or if he should have paid them, as complainant alleges, at the rate of 60¢ per hour [$1.20 double rate]" —the Commissioner in his brief admits "because it is true" that insular and federal funds were used in the said project.

[2] In his answer respondent alleged, among other things, that he had paid to the claimant chauffeurs "all the compensation required by the law and the Mandatory Decrees of the Minimum Wage Board," as well as that "such compensation is of 45¢ per hour and not of 60¢ per hour, as it is claimed." Likewise, he alleged having refused to pay the com-

Complainant claimed the difference between the rate of 45¢ per hour paid by respondent to his employees for the time each one worked in the said project, and the rate of 60¢ per hour fixed for employees included in Group D of Article 2 of the said Mandatory Decree No. 11, which, in addition to those expressly enumerated, comprises also "any other skilled worker not included in the other groups."

The lower court held that the wages of a chauffeur working in the construction industry was 60¢ per hour in compliance with Group D of the said Decree, and ordered respondent to pay to his employees—chauffeurs—the unpaid difference, plus an equal amount as penalty, under § 25 of the Minimum Wage Act. The only assignment of error on appeal is directed against said conclusion of the lower court.

The Commissioner of Labor maintains that the chauffeurs are *skilled* laborers, falling under Group D of Article 2, of Mandatory Decree No. 11, and that they are, therefore, entitled to receive a minimum salary of 60¢ per hour of normal work. Respondent maintains that they fall under Group E as *semiskilled* employees, and that, consequently, they are entitled to receive only the minimum wage of 45¢ per hour, which was paid in full to them.

██ Article 2 of the said Mandatory Decree No. 11 fixes different types of minimum wage per hour of labor, classifying the occupations of the construction industry in six groups.[3] As may be seen, the chauffeurs are not

pensation claimed "because the Act and the Mandatory Decrees of the Minimum Wage Board do not require the payment of such compensation."

In his brief respondent states that "it was a construction work and said Mandatory Decree No. 11 was applicable."

[3] Said article provides: "Article 2.—Minimum Wages.—The employer shall pay to each of his employees a salary not less than the rates per hour, fixed for any of the occupations performed by the employee, in the following scale:

| | *Occupations* | *Minimum Rate Per Hour* |
|---|---|---|
| Group A: | Operator of heavy machinery such as bull-dozer, grader, loader-conveyor (Barber-Greene or other), dragline, power shovel, or any other heavy machinery........................... | $1.10 |

expressly included in any of the groups contained in said article. Not being specifically included, it is necessary to determine in which class it was the intention of the Minimum Wage Board to include them, whether in the skilled—Group D—or in the semiskilled—Group E. It is plain at first blush, upon examining both groups, that the classification of the chauffeurs as skilled employees, including them in the same classification to which the workers of arts and trades belong, but without their limitation—Group D—coincides with the concept of skilled worker [4] that the Minimum Wage

| | Occupations | Minimum Rate Per Hour |
|---|---|---|
| Group B: | Craft, art or trade master with supervisory duties in the fields of carpentry, woodwork, electricity, mechanics, plumbing, painting or any other art or trade......................... | $0.90 |
| Group C: | Employee in a special occupation such as finishing mason, senior electrician, senior plumber, paper hanger, finishing carpenter, marble-mason, plasterer, rivet-hammer machine operator, acetylene cutter or welder, or foreman........... | $0.75 |
| Group D: | Fitter, mason, rigger, drilling machine operator, tracer, carpenter, gang foreman, slingman, blaster, blacksmith, tinsmith, plumber, hoist operator, mechanic, levelman, roller operator, painter, reinforcing steel worker, cableway signalman, welder, structural steel worker or any other skilled worker not included in the other groups ............................... | $0.60 |
| Group E: | Mason helper, reinforcing steel bar tier or cutter, hand driller, carpenter helper, janitor-messenger, machinery oiler, tinsmith helper, concrete mixer, timekeeper, hammer-man, mechanic helper, office clerk, light machinery operator, chainman, rodman, telephone operator or any other semiskilled worker not included in the other groups............................ | $0.45 |
| Group F: | Unskilled worker or employee............... | $0.32" |

[4] Article 1(C) of Mandatory Decree No. 12, amended, reads as follows:

"By *skilled laborer* is meant every workman who has full knowledge, understanding, and mastery of the manual technique and of the process involved in the performance of any of the occupations generally acknowledged as trades, such as, but not limited to, the following: mechanics, electricians, carpenters, saddlers, blacksmiths, painters, tinmen, solders,

Board included in Mandatory Decree No. 12, as amended, applicable to the transportation service, in contrast with the concept of semiskilled worker [5] therein expressed.

In general, the definition of skilled worker of Mandatory Decree No. 12 corresponds to the classification of Group D of Article 2 of Mandatory Decree No. 11, while the definition of semiskilled worker agrees with the classification made in Group E. In the definition of skilled worker contained in Mandatory Decree No. 12 are included "the occupations generally known as trade" enumerating the workers of arts and trades who are expressly included in Group D of Mandatory Decree No. 11. Likewise, in the definition of semiskilled worker of Mandatory Decree No. 12, as amended, there are included "the helpers of the trades enumerated in the definition of skilled worker," which are the same included in Group E of Mandatory Decree No. 11.

It should be noted also that when the Minimum Wage Board fixed the minimum wage rate in Article 2(b) of Mandatory Decree No. 12, as amended, it established a scale for the skilled workers, from which it expressly excluded the chauffeurs, including them in a different class, without excluding the chauffeurs when it fixed the scale for the semiskilled workers. It is an inescapable conclusion that the

---

plumbers, turners, and cabinetmakers. He should have ability to do the work that may be assigned to him within his trade with an independent mind and without the necessity that he be instructed in detail as to how he should do his work, it being sufficient to indicate to him the kind of work that it is desired to effect. He should have acquired previous experience in the work he is to perform."

[5] Article 1(D) of Mandatory Decree No. 12, amended, reads as follows:

"By *semiskilled laborer* is meant every laborer who, without having the degree of knowledge, understanding and mastery of the manual technique and of the processes which are required from the skilled laborer for the practice of his trade, possesses, however, certain knowledge which permits him to execute under supervision certain work within his trade. There shall be comprised in this class, without it involving any limitation, the helpers in the trades enumerated in the definition of skilled laborers, the greasers, and the rubber-tire mounters (*gomeros*)."

620

Board, by excluding the chauffeurs, in Mandatory Decree No. 12, from the classification of skilled workers and establishing a different classification for them, without doing it for the semiskilled workers, clearly expressed the concept of skilled workers for the chauffeurs of the transportation service. As Mandatory Decree No. 11 expressly failed to make any specific provision with regard to the chauffeurs employed in the construction industry, in order to determine the intention of the Minimum Wage Board in promulgating Mandatory Decree No. 11, as to the classification it meant for them, it is useful to consider the concept it applied to chauffeurs in other activities. For that purpose we have examined Mandatory Decree No. 12, as amended. On the other hand, considering the activities included in Group E of Mandatory Decree No. 11, in defining semiskilled workers, it is easy to reach the conclusion that it was the intention of the Board to include the chauffeurs as skilled workers and not as semiskilled.

 Let us now examine another argument which appellant suggests, rather than raises in his brief, and which in our judgment not only does not alter the decision of the lower court, but seems inconsistent with the position assumed by him therein. We have already seen in footnote 2, *supra*, that he contended in said court that he had paid the workers "all the compensation which the law and the Mandatory Decrees of the Minimum Wage Board of Puerto Rico require," claiming that such compensation "is 45 cents per hour and not 60 cents per hour." He alleges now, nevertheless, that certain provisions known as "Special Provisions for Projects Financed with Federal Aid-Funds Available to the Island of Puerto Rico," [6] which have a federal origin, classify the chauffeurs of trucks of more than 1½ tons as semiskilled

---

[6] These provisions have been compiled by the Commissioner of the Interior of Puerto Rico and form part, like the "General Conditions of the Contract for Insular Public Works" of 1946, of the contracts for the execution of works to be constructed jointly with insular and federal funds.

employees, and that, since said provisions are part of all the contracts for the construction of highways in Puerto Rico, in which federal funds are used—including the present case—such classification should prevail and be applied to the claimant workers.

Examining said provisions, we find that the minimum wage fixed therein for semiskilled employees is of 40¢ per hour instead of the 45¢ which respondent actually paid under his interpretation of Mandatory Decree No. 11 of the Minimum Wage Board of Puerto Rico. It was not his contention then, that he was not bound to pay the minimum wage fixed by said Decree, nor that he had paid in excess to his employees. In his own brief filed in this Court he admits that Mandatory Decree No. 11 is applicable.

In accordance with the "General Conditions of the Contract for Insular Public Works" approved in 1946 by° the Commissioner of the Interior of Puerto Rico—which repealed those approved in 1902, as amended in 1931—and which are also applicable to, and form a part of, all the contracts for the construction of public works in Puerto Rico, including the contract in the present case, the contractors of those works are bound to pay "not less than the minimum wage stipulated by Mandatory Decree No. 11 of the Minimum Wage Board, promulgated according to Act No. 8 of April 5, 1941, or as subsequently amended." It is evident, therefore, that the special federal provisions have no bearing on the case at bar, because respondent was bound to pay to his employees the wages fixed by the said Mandatory Decree No. 11.[7]

In view of our conclusion as to the scope of said Decree, the judgment will be affrmed.

[7] It is unnecessary, therefore, to consider in this case whether or not between Mandatory Decree No. 11 of the Minimum Wage Board of Puerto Rico, as we have interpreted it, and the regulation in question, there exists any conflict that may prevent the minimum wage provided by said Decree, from prevailing. Notwithstanding this fact, see *Avila* v. *District Court*, 68 P.R.R. 10 and *Fajardo* v. *District Court*, 69 P.R.R. 441.